UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRUCE STIPE (#152145)** | **CIVIL ACTION** |
| **VERSUS** | |
| **R. BUTLER, ET AL.** | **NO. 14-0217-JJB-EWD** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2016.

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRUCE STIPE (#152145)                                              CIVIL ACTION

VERSUS

R. BUTLER, ET AL.                                                  NO. 14-0217-JJB-EWD

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court in connection with the defendants' Motion for Summary Judgment (R. Doc. 77). This motion is opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Ass't Warden Robert Butler, Jr., and Col. Jimmy Smith, complaining that the defendants violated his constitutional rights by subjecting him to unconstitutional conditions of confinement and by thereafter issuing him a retaliatory disciplinary report. The plaintiff's Complaint also asserted a claim regarding alleged deficiencies in food preparation at the prison. Pursuant to an earlier Magistrate Judge's Report in this case (R. Doc. 67), approved by the District Judge on February 9, 2015 (R. Doc. 70), all of the plaintiff's claims have been dismissed except his claim asserted against the defendants in their individual capacities that he was subjected to unconstitutional conditions of confinement when he was required to wear the same unclean jumpsuit for a period of thirty (30) days or more.

The defendants move for summary judgment relying upon the pleadings, a Statement of

1

Undisputed Fact, the affidavits of co-inmates Jason Matthis and Shelly Walton, the affidavits of defendants Jimmy Smith and Robert Butler, and certified copies of the Inmate Location Sheets of the plaintiff and inmates Kevin Santiago, Cleothus Price, and Quincy Brown.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case

2

where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Notwithstanding plaintiff's status as a *pro se* litigant, he is not excused from the requirement that he set forth specific facts supporting his claim in response to a motion for summary judgment. *Bookman v. Shubzda*, 945 F.Supp. 999, 1004 (N.D. Tex., Nov. 7, 1996) *citing Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

As pertinent to the claim remaining before the Court, the plaintiff alleges in his Complaint, as amended, that he was forced to wear an unclean jumpsuit – that was allegedly stained with blood and discharges from sores on his body – for over thirty (30) days in 2013 and that, as a result, he contracted a "staph" infection.[1] The plaintiff alleges that he wrote letters to both defendant Butler and defendant Smith about the unsanitary conditions, but neither defendant addressed the problem. Although not stated in the Complaint, the Court has determined from pleadings and exhibits filed in the record by the plaintiff that he allegedly wrote an initial letter on October 20, 2013 to Capt. J. Sanders (not named as a defendant herein) complaining about unsanitary conditions at Camp J

---

1. The plaintiff is presumably referring to staphylococcus aureus.

3

at LSP, including an alleged failure to provide clean daily jumpsuits. Two days later, on October 22, 2013, the plaintiff allegedly addressed a letter to defendant Butler, the Assistant Warden at Camp J, asserting that sores were developing on his body from having worn the same jumpsuit for over a month. A similar letter was allegedly addressed to defendant Smith, the security colonel in charge of Camp J, on October 27, 2013. When no response was forthcoming, the plaintiff submitted a formal administrative grievance to prison officials on November 12, 2013. The plaintiff complained therein, *inter alia,* of an alleged failure to provide clean daily jumpsuits and of alleged inadequacies in the prison laundry equipment.

In response to the plaintiff's allegations, the defendants contend that they are entitled to qualified immunity in connection with the claim asserted herein. Specifically, the defendants contend that the plaintiff has failed to present evidence sufficient to establish that the defendants have participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to the plaintiff, the Court considers whether the defendants' conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement").

4

Under *Pearson*, courts now have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id*. at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis with respect to the plaintiff's claim asserted against defendants Butler and Smith, the Court finds that the defendants' motion for summary judgment should be granted. Specifically, the Court finds that the plaintiff has failed to present evidence sufficient to support a conclusion that the defendants have undertaken action in violation of the plaintiff's constitutional rights.

The plaintiff's allegations implicate his right, under the Eighth Amendment to the United States Constitution, to be free from cruel and unusual punishment in the form of unconstitutional conditions of confinement. In this regard, the prohibition against cruel and unusual punishment

5

requires only that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (reiterating that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition must be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers, supra*, 174 F.3d at 720, *citing Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Second, under a subjective standard, the Court must determine that the prison official responsible for the deprivation had a "sufficiently culpable state of mind -- that is, the official must have been deliberately indifferent to the prisoner's health or safety." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013), *citing Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 2008); *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Mere negligence is not a basis for liability under § 1983. *Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services*, 380 F.3d 872, 882-83 (5th Cir. 2004); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate claimant faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *See Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003), *citing Farmer v. Brennan, supra,* 511 U.S. at 847.

    The Supreme Court has made clear that the standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."

*Gates v. Cook,* 376 F.3d 323, 332-33 (5th Cir. 2004), *citing Estelle v. Gamble,* 429 U.S. 97, 102 (1976). To the extent that such conditions may be restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008), *citing Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. *Gates v. Cook*, *supra* 376 F.3d at 333 (5th Cir. 2004), *citing Wilson v. Seiter,* 501 U.S. 294 (1991). Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 679 (M.D. La. 2007), *citing Wilson v. Seiter, supra* 501 U.S. at 305.

      Although the question is a close one, the Court ultimately concludes that the plaintiff will be unable to prevail in connection with this case. The defendants have presented evidence that reflects there are procedures in place at Camp J for the provision of clean jumpsuits to inmates on a daily basis, and it is also undisputed that the inmates are allowed to shower on a daily basis. *See* R. Doc. 77-3. According to these procedures, inmates relinquish their dirty jumpsuits when they shower and are to be provided with clean ones thereafter by security officers. *Id.* The dirty jumpsuits are collected in bins at the head of each tier, and the bins are collected each morning by inmate orderlies whose assigned job it is to provide laundry services at the facility. *Id.* *See also* R. Docs. 77-4 and 77-5. There are two industrial-sized washers and dryers located at Camp J, and the plaintiff does not assert that these machines are not operational. *See* R. Doc. 77-2. The

7

assigned inmate orderlies have each executed affidavits attesting that after collecting dirty jumpsuits from the tiers every morning, they wash and dry approximately 500 jumpsuits each day. *See* R. Docs. 77-4 and 77-5. They attest that they then return the clean jumpsuits to the various tiers. *See id*. Defendant Jimmy Smith attests that, because of the large number of inmates housed at Camp J and the continuous cleaning and issuance of jumpsuits, the jumpsuits eventually wear out and need to be replaced. *See* R. Doc. 77-3. As such, he orders new jumpsuits on a monthly basis and stores them for issuance as needed. *Id*. Both of the defendants attest that they do not recall the plaintiff or any other inmate complaining about being unable to obtain clean jumpsuits on a regular basis. *See* R. Docs. 77-3 and 77-6.

Viewing the allegations in the light most favorable to the plaintiff, the Court accepts the plaintiff's assertion that he may have gone without a clean jumpsuit at different times or for intervals of time while he was confined at Camp J. Further, it is possible that these intervals may have extended for weeks at a time and, recognizing that prison officials have an obligation to provide adequate clothing to inmates, the Court certainly does not condone such a deficiency. Notwithstanding, the period of the plaintiff's confinement at Camp J was relatively brief, and the evidence does not support his allegations of widespread disregard for the conditions of his confinement. His Inmate Location Sheet reflects that he arrived at Camp J in July 2013, and that it was not until three months later, in late October 2013, that he first addressed a written complaint to prison officials regarding an alleged inability to obtain a clean daily jumpsuit. *See* R. Doc. 79 at p. 29. At that time, the plaintiff was apparently housed on Shark Unit at Camp J, and the correspondence made reference, not only to "clean jumpsuits daily," but also to alleged unhealthy

8

food.  *Id*.  Whereas the plaintiff referred in that correspondence to having contracted "staph infection[s]" twice previously at LSP, he made no reference to experiencing sores or lesions at that time.  *Id*.  Further, his subsequent correspondence to defendants Butler and Smith, on October 22 and 27, 2013, respectively, were also written while the plaintiff was still housed on Shark Unit. *Id*. at pp. 31 and 33.   Although the plaintiff made reference in those letters to allegedly "breaking out with sores," his contentions relative to the seriousness of his condition in this regard are belied by the fact that he did not make any complaint to prison medical personnel regarding alleged skin irritation until approximately 2 weeks later, on November 6, 2013, after he was transferred to Cuda Unit on November 5, 2013, and on that date, his sole complaint was with regard to "dry and flakely [sic]" skin, not to the development of any sores or lesions.  *See id*. at p. 45.   Finally, on November 10 and 13, 2013, the plaintiff voiced complaints to medical technicians that he was experiencing sores on his chest and left ear, and he was prescribed Bactrim for this complaint. *See id*. at pp. 43 and 46.   A notation in his medical records reflects that these sores were seen to be "resolved" within a couple of weeks thereafter on November 25, 2013.   *See* R. Doc. 79-1 at p. 3.  Whereas the plaintiff voiced occasional complaints of skin problems thereafter and was observed to exhibit minor objective skin irritation, *see id*. (noting a "sm[all] pustule on l[eft] upper eye lid" on November 25, 2013), R. Doc. 79 at p. 48 (noting a minor raised "boil/staph" of 1 cm. in diameter on December 1, 2013, that was neither open nor draining), and R. Doc. 79-1 at p. 4 (noting a "keloid" on the plaintiff's mid-sternum on April 9, 2014), the plaintiff received medical attention for these complaints, and these complaints do not reflect that he was facing a substantial risk of serious danger to his health or wellbeing.   The single lone reference in the plaintiff's

9

medical records to his belief that his outbreak had any relationship to an alleged failure to provide him with clean jumpsuits was on November 13, 2013, when he wrote that he was experiencing a "staph (infection) from unclean jumpsuits." This is a conclusory assertion, however, and there is no further reference in his medical records to unclean jumpsuits. Further, there is nothing whatever that confirms an alleged relationship between his skin condition and the cleanliness of his jumpsuits or that otherwise notes that the plaintiff was observed to be wearing unclean jumpsuits or was otherwise exhibiting poor hygiene. The plaintiff's Inmate Location Sheet reflects that he remained assigned to Cuda Unit at Camp J until April 23, 2014, when he was transferred to a different location at LSP.

Based on the foregoing, the Court concludes that there is insufficient evidence upon which a jury could base a finding of liability on the part of the named defendants. The plaintiff was admittedly provided with an ability to shower daily, and this may be seen to have ameliorated any potential problems that he was allegedly experiencing with hygiene on the unit. The period of his confinement at Cuda Unit, after his initial written complaint to the defendants in late October, 2013, was only approximately six months (until April 2014), and this confinement took place during the cooler months of the year when heat and any attendant humidity would likely have been at a minimum. In addition, the plaintiff was confined to a small cell for more than 23 hours per day during this period, and so was not apparently engaging in physical activity that may have caused him to become excessively dirty or unclean. Camp J admittedly had in place procedures for the cleaning of jumpsuits and other clothing, had available industrial equipment for this purpose, and had assigned inmates to perform this task on a daily basis. Whereas there may have

10

been breakdowns in the provision of daily clean jumpsuits, courts have concluded that the *weekly* laundering of inmates' clothing is acceptable under the Eighth Amendment, so the failure to provide clean *daily* jumpsuits does not appear to be a constitutional violation. *See, e.g., Van Nort v. Fair*, 2012 WL 1106922, *7 (D. Nevada Feb. 2, 2012), *rejected in part on other grounds*, 2012 WL 1107686 (D. Nevada March 30, 2012); *Malone v. Becher*, 2003 WL 22080737, *14 (S.D. Ind. Aug. 29, 2003). Although the plaintiff complains that the laundry machines were sometimes over-stuffed by the assigned inmate orderlies, that the water temperature may have been inadequate at times, and that insufficient amounts of detergent and bleach were added to the loads or were intentionally diluted by inmates, these assertions do not appear to be based on the personal knowledge of the plaintiff and these assertions do not suggest that the named defendant prison officials were deliberately indifferent to the needs of the plaintiff or to inmates in general. *See Crawford v. Caddo Correctional Center*, 2015 WL 3622689 (W.D. La. June 9, 2015) (rejecting inmate claim that his Eighth Amendment rights were violated because he was distributed "dirty or contaminated" t-shirts, towels, underwear and socks finding that the "inconvenience" of dirty laundry was merely a *de minimis* imposition). Further, the defendants have countered the plaintiff's assertions with sworn statements indicating that dilution of the cleaning solvents was not possible because both bleach and detergent were automatically dispensed to the washing machines by pipes and that the amount of bleach and detergent was pre-determined by the sizes of the loads placed in the machines. *See* R. Doc. 77-3. Although the plaintiff has provided the sworn statements of four co-inmates that seemingly corroborate his contentions, *see* R. Doc. 79 at pp. 18-28, three of these statements are notably lacking in credibility, and the fourth does not alter

11

the Court's conclusion regarding the essential weakness of the plaintiff's case.[2] Finally, the defendants who have been named herein by the plaintiff clearly held principally supervisory and administrative positions at Camp J, and the plaintiff has not alleged that they were personally and directly responsible for providing the plaintiff with clean jumpsuits every day. *See Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) recognizing that to be liable under § 1983, a prison official must have been personally involved in conduct causing the deprivation of an inmate's constitutional right). In short, considering the totality of the evidence in this case, the Court finds that a reasonable jury could not conclude that the defendants were deliberately indifferent to a perceived substantial risk of serious harm to the plaintiff's health or wellbeing during the time in question. Whereas the plaintiff may have been subjected to uncomfortable and even harsh conditions for a period of time at Camp J, and whereas the Court recognizes that prison officials have an obligation to provide reasonable accommodation for the provision of clean and adequate clothing, the Court is unable to conclude from the evidence before it that the security colonel and assistant warden in charge of operations at Camp J at LSP were deliberately indifferent to a perceived substantial risk of serious harm to the plaintiff during the time in question. Accordingly, the Court concludes that the defendants are entitled to summary judgment.

---

[2] With regard to the affidavit of Kevin Santiago, whereas this inmate attests that he was assigned to a cell adjoining the plaintiff between October 1 and December 10, 2013, the defendants have provided the Inmate Location Sheet of this prisoner that reflects that he did not arrive at Camp J until December 10, 2013, was not assigned to Cuda Unit at Camp J until April 2014, and was never housed on the same cell tier as the plaintiff. *See* R. Doc. 84-1 at p. 4. With regard to the affidavit of Cleothus Price, the defendants have provided the Inmate Location Sheet of this prisoner indicating that he was housed in a dormitory at Camp J for only three months in 2010 and worked in the Camp J kitchen during that period. *See id*. at p. 10. Finally, with regard to the affidavit of Quincy Brown, this inmate was never housed at Camp J, and while he may have potentially worked at Camp J prior to July, 8, 2013, he did not do so thereafter and so was not working at Camp J during the relevant time period. *See id.* at p. 13.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 77) be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 4, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**